THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WESTFIELD INSURANCE COMPANY, ) | |
| ) | |
| *Plaintiff/Counter-defendant*, ) | No. 24 C 6487 |
| v. ) | |
| ) | Chief Judge Virginia M. Kendall |
| FIRST SPECIALTY INSURANCE ) | |
| CORPORATION, n/k/a Swiss Re Corporate ) | |
| Solutions Capacity Insurance Corporation, ) | |
| ) | |
| *Defendant/Counter-plaintiff*. ) | |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiff Westfield Insurance Company's Motions to Strike Defendant First Specialty Insurance Corporation's ("FSIC's") Answer and Affirmative Defenses and its Motion to Dismiss FSIC's Counterclaims. (Dkt. 19; Dkt. 17; Dkt. 21). Westfield filed suit against FSIC for breach of a contractual settlement agreement made between the two parties. (Dkt. 1). FSIC counterclaimed for declaratory judgment, breach of contract, and, in the alternative, equitable contribution. (Dkt. 9). For the following reasons, the Court denies Westfield's Motion to Strike FSIC's Answer [19]. The Court grants, in part, Westfield's Motion to Strike FSIC's Affirmative Defenses [17]. The Court denies Westfield's Motion to Dismiss [21].

**BACKGROUND**

This dispute between insurance companies stems from an accident, which occurred at a construction site in 2016. Barry Stanek, a construction worker, was injured when the freight elevator he was on became dislodged and fell two stories. (Dkt. 9 at 4). Stanek filed a lawsuit in the Illinois Circuit Court of Cook County against, among others, the elevator company as well as the company responsible for managing the construction site where the man was working when he was injured. (Dkt. 9 at 31); (Dkt. 26 at 6).

Westfield insured the construction company, while FSIC insured the elevator company. (Dkt. 9 at 57). Stanek's action prompted Westfield to file two of its own insurance lawsuits[1] against FSIC and other insurers seeking a declaration regarding defense and indemnity owed to the site's construction manager and site owner. (Dkt. 38 at 2).

In September 2021, FSIC and Westfield reached a "global settlement" as to these lawsuits. (Dkt. 38 at 3). The settlement was never memorialized in writing. (Dkt. 9 at 44). Westfield and FSIC paid contributions towards the settlement. (Dkt. 26 at 2). FSIC alleges that the global settlement resolved all pending and potential future claims and liability and coverage issues "by and between the affected parties." (Dkt. 9 at 51–52). This meant that all current and potential future lawsuits would be concluded with no further litigation among the insurers.

Afte reaching the agreement, FSIC alleges that Westfield announced that it wanted to "revise" the global settlement to allow Westfield to continue to pursue claims against certain insurers despite the settlement. (*Id.*) Specifically, Westfield sought contribution from Continental Insurance Company, another insurance company that had not contributed to the settlement agreement. (Dkt. 38-7 at 3, Exhibit 7).

Following Westfield's announcement that it sought to revise the settlement, FSIC inquired whether Westfield's revision would expose FSIC to additional claims by and between the settling parties—which the global settlement had extinguished. (*Id.*) FSIC demanded that Westfield honor the global settlement or, alternatively, agree to indemnify FSIC against the risks of such potential future claims, but Westfield refused. (Dkt. 9 at 4). This led to Westfield to file the current action

---

[1] These two lawsuits were against different parties. The first was against the owner of the property where Stanek's fall took place, BCSP OND Property, L.L.C. ("the BCSP lawsuit"). The second was against the site's construction manager, MB Real Estate ("the MB lawsuit"). (Dkt. 38 at 2).

against FSIC. (Dkt. 1). FSIC counterclaimed for declaratory judgment, breach of contract, and, in the alternative, additional insured contribution. (Dkt. 9).

FSIC claims that its contractual dispute with Westfield turns on whether, at the time the parties reached the global settlement, there was "carve-out" provision for actions against Continental—the company that Westfield wanted to pursue claims against. (*Id*. at 52). Additionally, FSIC contends that Westfield breached the global settlement by pursuing this action against FSIC because the agreement released all pending and future claims against parties in the Stanek litigation. (*Id*. at 53).

FSIC makes claims for declaratory judgment and breach of contract. (Dkt. 9). In the alternative, if the Court finds that the settlement negotiations did not result in a binding contract, FSIC seeks equitable contribution for defending the site construction manager (a company called MB Real Estate) from litigation stemming from the construction worker's injury.

### I. Westfields's Motion to Strike FSIC's Answer

Westfield's Motion to Strike FSIC's Answer (Dkt. 9) asks the court to strike FSIC's answer to all 106 paragraphs of the complaint based on FSIC's responses to only a few specific allegations. The purpose of a responsive pleading is "to put everyone on notice of what the defendant admits and what it intends to contest." *Edelman v. Belco Title & Escrow, LLC*, 754 F.3d 389, 395 (7th Cir. 2014). Generally, if a complaint fails to meet the requirements of Rule 8, the Court has the power to strike either the entire complaint or those parts of the complaint that are "redundant, immaterial, impertinent or scandalous." FED. R. CIV. P. 12(f).

For the court to grant a motion to strike, the movant must show that " 'the allegations being challenged are so unrelated to plaintiff's claim as to be void of merit and unworthy of any consideration' and that the allegations are unduly prejudicial." *See, e.g., Cumis Ins. Soc. v. Peters*,

983 F.Supp. 787, 798 (N.D. Ill. 1997) (citation omitted). "Prejudice results where the challenged allegation has the effect of confusing the issues or is so lengthy and complex that it places an undue burden on the responding party." *Id.* Motions to strike are viewed with disfavor because striking a portion of a pleading is a drastic measure. 5A Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 1380 (1990). Consequently, such motions are frequently denied "when no prejudice could result from the challenged allegations, even though the matter literally is within the category set forth in Rule 12(f)." *Id.* at § 1382. District courts have considerable discretion to strike allegations under Rule 12(f). *Delta Consulting Grp.*, 554 F.3d at 1141–42.

Upon review of FSIC's pleading, the Court finds that FSIC's pleadings are appropriate to help FSIC establish its breach of contract counterclaim. For example, Westfield takes issue with FSIC's response to Paragraph 80. (Dkt. 25 at 8). While FSIC provides additional context to Westfield's allegation that the global settlement required FSIC to release Westfield of any future claims against it, FSIC also states that it denies any allegation not consistent with this additional detail. (*Id.*) These details can help FSIC establish its breach of contract claim by providing its understanding of the contact negotiations—especially because it was not memorialized in writing. (Dkt. 9 at 44); *see also Philadelphia Indem. Ins. Co. v. Chicago Title Ins. Co.*, 771 F.3d 391, 401 (7th Cir. 2014) (citations omitted) ("A counterclaim is used when seeking affirmative relief, while an answer or affirmative defense seeks to defeat a plaintiff's claim.").

Though several of FSIC's responses demonstrate robust disagreements about the negotiations leading up to the global settlement, such is the nature of litigating a breach of contract claim. These disagreements do not warrant the Court to strike a defendant's response. *See Riemer v. Chase Bank, N.A.*, 275 F.R.D. 492, 494 (N.D. Ill. 2011) ("a motion to strike under Rule 12(f) is not a mechanism for deciding disputed issues of law or fact, especially where, as here, there has

4

been no discovery, and the factual issues on which the motion to strike largely depends are disputed"); *Jones Truck Lines, Inc. v. Kraft Gen. Foods, Inc.*, 1993 WL 420962, at *1 (N.D. Ill. Oct. 18, 1993) (explaining that "courts are reluctant to determine disputed or substantial issues of law on a motion to strike; these questions quite properly are viewed as determinable only after discovery and a hearing on the merits.").

II.     **Westfield's Motion to Strike FSIC's Affirmative Defenses**

Westfield also moves to strike all four of FSIC's affirmative defenses. Motions to strike are generally disfavored and affirmative defenses "will be stricken only when they are insufficient on the face of the pleadings." *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989). A court should only strike an affirmative defense if it appears beyond a reasonable doubt the pleader can prove no set of facts in support of his defense that would plausibly entitle him to relief. *See, e.g., Mittelstaedt v. Gamla-Cedron Orleans LLC*, 2012 WL 6188548, at *2 (N.D. Ill. Dec. 12, 2012).

    A.  **Unclean Hands**

FSIC's first affirmative defense is unclean hands. The unclean hands doctrine "precludes a party from taking advantage of his own wrong." *Coexist Found., Inc. v. Fehrenbacher*, 865 F.3d 901, 908 (7th Cir. 2017). The doctrine requires that a party's conduct be "tainted with the inequitableness or bad faith relative to the matter in which he seeks relief." *Zeidler v. A & W Restaurants, Inc.*, 71 F. App'x 595, 599 (7th Cir. 2003) (quoting *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945)). A court is given a "wide range" of discretion under this doctrine and the alleged misconduct "need not necessarily [be] of such a nature as to be punishable as a crime." *Packers Trading Co. v. Commodity Futures Trading Comm'n*, 972 F.2d 144, 148–149 (7th Cir. 1992) (quoting *Precision Instrument Mfg. Co.* 324 U.S. at 815). At the

5

pleading stage, a defendant merely needs to allege a plaintiff engaged in "fraud, unconscionability, or bad faith" directed at the defendant, and that the misconduct pertains to the subject matter of the lawsuit and affects the "equitable relations between the litigants." *Int'l Union, Allied Indus. Workers of Am., v. Local Union No. 589, Allied Indus. Workers of Am.*, 693 F.2d 666, 672 (7th Cir. 1982).

FSIC has adequately alleged unclean hands. FSIC alleges that Westfield always intended to pursue claims that were precluded by the global settlement. FSIC claims that "Westfield informed others of that intent, but not FSIC, and even instructed the mediator to conceal its intentions from Continental." (Dkt. 9 at 36, 45). These allegations are consistent with "fraud, unconscionability, or bad faith" directed at FSIC. *Int'l Union*, 693 F.2d at 672. Additionally, the allegations "pertain[] to the subject matter of the lawsuit." *Id*. Accordingly, Westfield's motion to strike this affirmative defense is denied.

### B. Fraudulent Inducement

FSIC's second affirmative defense is fraudulent inducement. "In Illinois, fraudulent inducement requires proof of five elements: (1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance." *CSX Transportation, Inc. v. Five Star Enter. of Illinois*, Inc., No. 16 C 9833, 2018 WL 1695361, at *2 (N.D. Ill. Apr. 6, 2018) (quoting *Hoseman v. Weinschneider*, 322 F.3d 468, 476 (7th Cir. 2003)). Fraudulent inducement is subject to the heightened pleading standard under Rule 9(b). Under Rule 9(b), a party pleading fraud must allege "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and

6

the method by which the misrepresentation was communicated" to defendants. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014).

FSIC meets the pleading standard for this claim. It alleges that Westfield "consistently represented during negotiations that it was seeking a global settlement between all affected parties, including the dismissal of all coverage claims," (prong one) without the intention to do so (prong two). (Dkt. 9 at 34; Dkt. 38 at 17–19). According to FSIC, Westfield intentionally represented this via email to FSIC so that FSIC would contribute to the global settlement (prong three)—which FSIC agreed to do (prong four). (Dkt. 9 at 47). FSIC allegedly incurred damages because it had to defend itself against potential liability from parties Westfield was now suing, in violation of the global settlement (prong five). (*Id.*) FSIC meets the Rule 9(b) standard by the pointing to specific emails from Westfield representing to FSIC the global settlement would end "all current and future litigation on this matter including coverage disputes." (Dkt. 38 at 18). Accordingly, Westfield's motion to strike this affirmative defense is denied.

### C. Failure to Mitigate

FSIC's third affirmative defense is failure to mitigate. The duty to mitigate "imposes a duty on the injured party to exercise reasonable diligence and ordinary care in attempting to minimize his damages after injury has been inflicted." *Karahodzic v. JBS Carriers, Inc.*, 881 F.3d 1009, 1017 (7th Cir. 2018). "[C]ourts have generally held that where discovery has barely begun, the failure to mitigate defense is sufficiently pled without additional facts." *AAR Int'l, Inc. v. Vacances Heliades S.A.*, 202 F. Supp. 2d 788, 800 (N.D. Ill. 2002) (cleaned up).

Westfield intentionally dismissed its claims against FSIC in state court, while dispositive motions were pending, only to bring the claim in federal court. (Dkt. 38 at 20). This allegedly raised FSIC's costs to litigate the extent of the global settlement's coverage. Though FSIC provides

7

limited detail explaining how Westfield failed to mitigate, its showing is sufficient given the low bar at the pleading stage. Accordingly, Westfield's motion to strike this affirmative defense is denied.

### D. "Set off"

FSIC's fourth affirmative defense is "set off." A claim for set off is essentially a " 'counterdemand based on some transaction entirely extrinsic to the plaintiff's cause of action.' " *Cipa Mfg. Corp. v. Allied Golf Corp.*, No. 94 C 6574, 1995 WL 337022, *2 (N.D.Ill. May 24, 1995) (quoting *In re Johnson,* 552 F.2d 1072, 1078 (4th Cir.1977); *Coplay Cement Co. v. Willis & Paul Group,* 983 F.2d 1435, 1440 (7th Cir.1993) (describing set off as the ancestor of the permissive counterclaim). Where set off does not destroy a plaintiff's cause of action, a claim for set off is not an affirmative defense. *Cipa Mfg. Corp.,* 1995 WL 337022 at *1–2. Further, set off is not properly pled as an affirmative defense where the set off alleged arises out of a transaction separate from that raised in the plaintiff's cause of action, potentially reducing recovery rather than eliminating the liability altogether. *Id.* Such a scenario represents a permissive counterclaim rather than an affirmative defense. *See Coplay Cement Co. Inc. v. Willis & Paul Group,* 983 F.2d 1435, 1441 (7th Cir.1993) (holding that a permissive counterclaim arises from a different transaction from the main claim, and a set off, is a subset of the permissive counterclaim.).

Here, FSIC alleges that Westfield sought damages against other insurers involved in the Stanek dispute. (Dkt. 9 at 49–50). FSIC seeks to "set off" any duplicative or overlapping damages that Westfield received in those actions. (*Id*.) Because FSIC's set-off claim would potentially reduce FSIC's liability, but not eliminate it, this affirmative defense is stricken. FSIC is granted leave to file a permissive counterclaim alleging this claim in sufficient detail.

### III. Westfield's Motion to Dismiss

Westfield also moves to dismiss FSIC's three counterclaims. FSIC's counterclaims are for: breach of contract, declaratory judgment, and in the alternative, equitable contribution. (Dkt. 9 at 51–54). To survive a motion to dismiss for failure to state a claim, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Kaminski v. Elite Staffing*, 23 F.4th 774, 776 (7th Cir. 2022) (quoting Fed. R. Civ. P. 8(a)(2)). Specifically, "a plaintiff must allege 'enough facts to state a claim that is plausible on its face.' " *Allen v. Brown Advisory, LLC*, 41 F.4th 843, 850 (7th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

At the same time, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678). As such, "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Further, the moving party bears the burden of establishing the insufficiency of the plaintiff's allegations. *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021).

Westfield makes three arguments why FSIC's Counterclaims should be dismissed—two relating to the equitable contribution claim and one relating to FSIC's breach of contract and declaratory judgment claim. (Dkt. 26; Dkt. 39 at 13, n. 2). First, Westfield argues that FSIC fails to state a claim for equitable contribution because the two insurer's covered different named insureds in the underlying dispute. (Dkt. 26 at 6). Second, Westfield argues that FSIC already released its Counterclaim for equitable contribution as part of the global settlement. (*Id.* at 8).

9

Third, Westfield contends that FSIC has failed to state a claim for breach of contract because FSIC stakes its entire counterclaim on Westfield's attempt enforce the global settlement. (*Id*.)

### A. Breach of Contract

Westfield argues that FSIC's breach of contract claim should be dismissed because "FSIC's allegations in its Counterclaim, taken as true, do not add up to a contract requiring Westfield to dismiss" its lawsuit against Continental. (Dkt. 26 at 4). "To prevail on a breach-of-contract claim in Illinois . . . [FSIC] must show that there was a contract between the parties, and that [Westfield] breached the contract by failing to adhere to its terms." *Hammarquist v. United Cont'l Holdings, Inc.*, 809 F.3d 946, 949 (7th Cir. 2016). This entails: "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010).

The two parties agree that there was a global settlement to release insurers involved in the Stanek tort incident. (Dkt. 26 at 2); (Dkt. 9 at 51). The parties' disagreement is whether Continental was part of the global settlement. (Dkt. 26 at 2); (Dkt. 9 at 52). FSIC alleges that the global settlement required Westfield "to dismiss and forever release all pending and future claims against any affected party arising from the *Stanek* litigation." (Dkt. 9 at 53). Westfield's failure to dismiss FSIC from its other lawsuit violated this agreement. FSIC was forced to pay fees in litigating this matter. These allegations satisfy the pleading requirements for breach of contract.

Westfield claims that FSIC contradicts itself by including an email in its exhibits, in which FSIC acknowledges that Westfield intends to pursue litigation against Continental. (Dkt. 39 at 2); (Dkt. 9-10 at 3). This email, however, was written two weeks before the parties agree that they reached the settlement agreement. (Dkt. 9-10 at 3). At this early stage, Westfield's contention that

10

this is fatal to FSIC's breach claim is unavailing. Accordingly, the Court denies Westfield's motion to dismiss the breach of contract counterclaim.

### B. Declaratory Judgment

Westfield also seeks to dismiss FSIC's declaratory judgment claim. (Dkt. 39 at 13). The Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, gives the Court discretion to "declare the rights and other legal relations of any interested parties seeking such a declaration." 28 U.S.C. § 2201. "The purposes of declaratory judgments are to 'clarify[ ] and settl[e] the legal relations at issue' and to 'terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.' " *See Maui Jim, Inc. v. SmartBuy Guru Enters.,* 2018 WL 509960, at *8 (N.D. Ill. Jan. 23, 2018) (quoting *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 749 (7th Cir. 1987)).

Here, FSIC argues that a declaratory judgment would clarify the global settlement's scope. (Dkt. 9 at 51). The Court's determination of the agreement's scope would resolve whether Westfield, in fact, violated the agreement by pursuing claims against Continental. (*Id*. at 52). Put differently, FSIC seeks relief that would "declare the rights and other legal relations" of the two parties—the point of a declaratory judgment. 28 U.S.C. § 2201. What's more, Westfield makes no arguments for dismissing this claim, which are different than the ones it makes against FSIC's breach of contract claim. Accordingly, Westfield's motion to dismiss this claim is denied.

### C. Equitable Contribution

Finally, Westfield also seeks to dismiss FSIC's equitable contribution claim. Under Illinois law, "[c]ontribution as it pertains to insurance law is an equitable principle arising among coinsurers which permits one insurer who has paid the entire loss, or greater than its share of the loss, to be reimbursed from other insurers who are also liable for the same loss." *Home Ins. Co. v.*

11

*Cincinnati Ins. Co.*, 213 Ill. 2d 307, 316 (2004). It "applies to multiple, concurrent insurance situations and is only available where the concurrent policies insure the same entities, the same interests, and the same risks." *Id*. Ther term "risk" means the "possibility of injury." *Am. States Ins. Co. v. CFM Const. Co.*, 398 Ill. App. 3d 994, 999 (2010). If two insurers cover distinct risks— meaning that they cover different degrees of probability of suffering harm—there can be no contribution among them. *Home Ins. Co.*, 213 Ill. 2d at 316.

FSIC seeks contribution from Westfield for defending MB Real Estate—the construction manager of the building where the elevator fell— in the Stanek action. (Dkt. 9 at 60). FSIC claims that for the purposes the Stanek action, Westfield and FSIC are "co-insurers" of MB Real Estate. (*Id*. at 59). Therefore, FSIC argues that for purposes of equitable contribution, Westfield should have to contribute to MB Real Estate's defense. (Dkt. 38 at 26). Westfield argues, however, that FSIC is not entitled to equitable contribution because the two companies covered distinct risks in the building where the elevator accident happened—with Westfield's insured responsible for the construction site and FSIC's insured responsible for the building's elevators. *Home Ins. Co.*, 213 Ill. 2d at 316.

In *Home Ins. Co. v. Cincinnati Ins. Co.*, the Illinois Supreme Court ruled on a similar issue. 213 Ill. 2d at 316. Two insurance companies covering different subcontractors disagreed about which was responsible for an employee's injuries. *Id*. at 310. In determining that the two companies' policies "clearly covered different possibilities or degrees of probability for suffering harm or loss," the Court ruled equitable contribution was not available. *Id*. at 316.

At this early stage in the litigation, it is too soon to determine whether FSIC and Westfield covered the "same risks" like the Court did in *Home Ins. Co.* Westfield insured the construction manager, while FSIC insured the elevator company. (Dkt. 21 at 6). FSIC claims that part of

Westfield's policy covered the building elevators as well. (Dkt. 38 at 28). Based on these facts, it is plausible that the two companies covered substantively the same risks for purposes of the litigation involving MB Real Estate. Therefore, it is plausible that equitable contribution is appropriate. Accordingly, the Court denies Westfield's motion to dismiss FSIC's equitable contribution claim.

## CONCLUSION

For the reasons set forth above, the Court denies Westfield's Motion to Strike FSIC's Answer [19]. The Court grants, in part, Westfield's Motion to Strike FSIC's Affirmative Defenses [17]. FSIC's "set-off" defense is stricken. The Court denies Westfield's Motion to Dismiss [21].

_____
Virginia M. Kendall
United States District Judge

Date: March 4, 2025

13